IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CHERYL ELLIOTT, : | |
| Plaintiff, : | |
| v. : | Action No. 2:16-cv-00708 |
| NANCY A. BERRYHILL, : Acting Commissioner, Social Security Administration, : | |
| Defendant. : | |

## REPORT AND RECOMMENDATION

Plaintiff Cheryl Elliott ("Plaintiff") filed a complaint, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), that seeks judicial review of the final decision of the Defendant, Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration ("the Commissioner"), which denied Plaintiff's claim for Disability Insurance Benefits ("DIB") pursuant to Title II, and his claim for Supplemental Social Security Income ("SSI") pursuant to Title XVI, of the Social Security Act ("the Act"). Both parties have filed Motions for Summary Judgment, ECF Nos. 11 and 15, with briefs in support, ECF Nos. 12 and 16, which are now ready for recommended resolution.

This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to

United States Magistrate Judges. For the following reasons, the undersigned **RECOMMENDS** the Plaintiff's Motion for Summary Judgment, ECF No. 11, be **DENIED**, and the Commissioner's Motion for Summary Judgment, ECF No. 15, be **GRANTED**.

## I. PROCEDURAL BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on September 17, 2012, alleging that she became disabled on January 17, 2012 due to lower back pain, obesity, asthma, hypertension, and anxiety. R. at 11, 142-50, 164, 167-68.[1] Plaintiff's application was initially denied on April 3, 2013, and denied again upon reconsideration on March 5, 2014. R. at 88-98, 100-06. Plaintiff requested a hearing in front of an administrative law judge, which was held on September 30, 2015 before Administrative Law Judge Jeffrey M. Jordan ("the ALJ"). R. at 25-54. On October 22, 2015, the ALJ issued his decision denying Plaintiff's application. R. at 8-24. On October 11, 2016, the Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. R. at 1-6. After exhausting her administrative remedies, Plaintiff filed her Complaint for judicial review of the Commissioner's final decision on December 8, 2016.[2] ECF No. 1. The Commissioner filed an Answer on February 3, 2017. ECF No. 7. Both parties filed Motions for Summary Judgment, ECF Nos. 11 and 15, and Plaintiff filed a Reply in support of her Motion, ECF No. 17, and the matter is now ripe for recommended adjudication.

---

[1] "R." refers to the certified administrative record that was filed under seal on February 3, 2017, ECF No. 8, pursuant to Local Civil Rules 5(B) and 7(C)(1).
[2] At the time this Complaint was filed, Carolyn W. Colvin was the Acting Commissioner of the Social Security Administration ("SSA"). Nancy A. Berryhill is now the current Acting Commissioner.

2

## II. RELEVANT FACTUAL BACKGROUND

In her application, filed September 17, 2012, Plaintiff alleges disability due to lower back pain, obesity, asthma, hypertension, and anxiety, with a disability onset date of January 17, 2012, later amended to March 20, 2012.[3] R. at 11, 142-50, 164, 167-68. At the time of the ALJ's October 22, 2015 decision denying her claim for disability insurance benefits, Plaintiff was an English-speaking, fifty-one year old woman with a high school education who previously worked as an administrative clerk at the Norfolk Airport Authorities. R. at 18, 29, 47. The Court notes, as will become relevant later, Plaintiff was born in January, 1964. R. at 144. Therefore, at the time of her amended alleged disability onset date on March 20, 2012, she was forty-eight years old and thus a "younger" person pursuant to the SSA regulations. *See* 20 C.F.R. § 416.963(c) (defining anyone under the age of 50 as a "younger person.")

At the hearing held on September 30, 2015, Plaintiff appeared, was represented by an attorney, Robert W. Gillikin, II, and supplemented her medical records by providing additional information via testimony. An impartial Vocational Expert ("VE"), Andrew Caporale ("the VE") also testified. R. at 27-54. The record included the following factual background for the ALJ to review:

Plaintiff testified that she lived alone in Norfolk, Virginia both during the period of alleged disability (March 20, 2012 to March 16, 2014) and at the time of the September 30, 2015 hearing. R. at 31. She is a high school graduate who has completed some college courses at a local community college. R. at 29-30. Beginning in approximately January 2000 until January

---

[3] After this alleged disability onset date was amended to March 20, 2012, Plaintiff's application was further amended to reflect a request for a closed period from March 2012 to March 16, 2014. R. at 11 (citing Exhibits 9D and 11E). *See also* R. at 53 ("ALJ: Ms. Elliott, do you agree to amend your application to reflect a closed period of disability from March 20, 2012 until March 16, 2014? [Plaintiff]: Correct.").

3

2012, Plaintiff worked as an administrative clerk at the Norfolk Airport Authorities, R. 32-33, which the VE characterized as a light, semi-skilled occupation as performed by Plaintiff, R. at 47. Because of her responsibility for receiving and distributing the mail (including large packages), manual opening and closing of runways, and subsequent glitches in the implementation of an automated system, Plaintiff's duties included an appreciable amount of physical exertion such as constant standing, walking, lifting, etc. R. at 44-46. Plaintiff testified that in January 2012, her employment at the Norfolk Airport Authorities was terminated, but even if she had not been laid off, due to her pain levels she "would have had to quit -- to leave that job. I would not have been able to stay there and do that job." R. at 35. Beginning in approximately 2012, Plaintiff was reportedly experiencing significant pain levels (8 or 9/10) in her lower back, legs, knee, and pain in numbness in her hands that was affecting her ability to work, drive, walk, stand, and sit. R. at 30, 32, 33-35, 40-41. On March 20, 2012, Plaintiff was five feet, two inches tall and weighed one hundred and ninety-six (196) pounds with a BM[I] of 35.8. R. at 13 (citing R. at 272-300 ("Exhibit 2F")). Despite her pain, near the end of 2013, Plaintiff attempted to return to the workforce, working in an office and in a warehouse; however, Plaintiff lasted less than a week at both positions due to Plaintiff's pain levels (8/9 out of 10), and the warehouse position's requirement that Plaintiff stand for the duration of the work day and be able to lift things. R. at 37-39. Subsequently, however, Plaintiff began working as an accounting tech in March 2014 and was still in that employment at the time of the hearing before the ALJ. R. at 31.

Medical Records

Plaintiff's medical history prior to the amended alleged onset date of disability is significant for a long history of lower back pain resulting from three automobile accidents, one in 2002, one in June 2006, and one in November 2008. R. at 16, 233. Plaintiff initially began pain management treatment with Dr. Beth Winke, M.D. ("Dr. Winke") on or about December 13, 2010. R. at 16, 298-300. On or about February 21, 2011, after reviewing an MRI of Plaintiff's thoracic spine, Dr. Winke found moderate disc protrusion and extrusion and performed a steroid injection for pain relief, and then a second injection was administered on May 26, 2011. R. at 16, 294-97. At a follow-up visit on June 26, 2011, Plaintiff reported a ninety-five percent (95%) reduction in pain. R. at 293. However, in March 2012, Plaintiff returned for an additional injection and also for complaints of knee pain. R. at 280-84. On March 20, 2012 (the amended onset date), Plaintiff returned for pain management treatment with Dr. Winke, who provided Plaintiff with prescription refills and a brace for her right knee, the latter of which Plaintiff testified did "not really" help. R. at 16, 35, 225, 276. At the end of April 2012, Plaintiff's health insurance through her previous employment ran out and she was out of treatment for approximately one year before resuming treatment at the Park Place Medical Center ("Park Place") which provides low-cost medical care. R. at 35-36, 225. Park Place prescribed a muscle relaxer and ibuprofen, but that reportedly did nothing to alleviate Plaintiff's "intense" pain. R. at 36, 313-66. Dissatisfied with the care she was receiving at Park Place, and having recently found employment at an accounting office, Plaintiff began treatment at the Sentara Ambulatory Care Center Clinic ("the Clinic") in the beginning of 2014, where Plaintiff received prescriptions for Neurontin (brand name gabapentin) and Ultram which reduced Plaintiff's pain levels (6 out

of 10) and allowed her to return to the workforce at a desk job on March 17, 2014. R. at 31, 36-38, 225, 570-627 ("Exhibit 12F"). The Clinic also treated Plaintiff for the numbness and pain in her hands beginning on March 27, 2014. R. at 40, 570-627 ("Exhibit 12F"). Plaintiff would later undergo surgery on her right hand to alleviate her symptoms of carpal tunnel syndrome, with a planned surgery on her left hand. R. at 42-43.

<u>Vocational Expert Testimony</u>

As previously noted, at the September 30, 2015 hearing, the VE appeared and testified. When asked whether a hypothetical individual with Plaintiff's age, education, and work experience, limited to sedentary work but the ability to lift and carry from waist to chest level, and with the additional limitations of walking no longer than one block at a time on a flat even surface at a slow pace, stand no longer than fifteen minutes at a time and sit no longer than fifteen to thirty minutes at a time before having to stand for a few minutes, avoid climbing ladders, ropes, scaffolds, crawling, and kneeling, perform other postural movements occasional, avoid constant fingering, grasping, handling and reaching, and avoid working around hazards such as moving, dangerous machinery and unprotected heights, could perform Plaintiff's past work, the VE answered "[n]o your honor, they could not perform the past work." R. at 49. The VE opined that the past work was actually performed at a light level, but the exertional limitations described by the ALJ's hypothetical reflected a sedentary work limitation. R. at 49. Based on the ALJ's first (sedentary) hypothetical, the VE stated that there were three positions available at this sedentary level including unskilled work as an order clerk, food and beverage, as a call-out operator, and as a surveillance system monitor in all industries. R. at 50. For the second hypothetical, when asked if the same three positions were available if the first

hypothetical was slightly modified such that the individual was limited to occasional fingering, grasping, handling, and reaching with the right upper extremity (as opposed to "avoid[ing] constant fingering, grasping, handling, and reaching), the VE testified that only the position of surveillance system monitor would be available to the hypothetical individual. R. at 51. *See also* R. at 48-49 (asking the VE to assume the hypothetical individual limitation of "avoid constant fingering, grasping, handling, and reaching"). The VE further testified that if the first hypothetical individual needed to lie down or rest two or more hours in an eight hour workday, that none of the three previously mentioned positions (order clerk, food and beverage, call-out operator, and surveillance system monitor in all industries) would be available because "that would exceed the tolerance of the break periods and also limits the person's productivity to below [eight-five] percent which is the minimal amount of productivity that is required." R. at 52.

Closing Remarks

At the end of the hearing, Plaintiff agreed to amend her request to a closed period of disability, from March 20, 2012 until March 16, 2014. R. at 53. Additionally, Plaintiff's counsel gave closing remarks in support of Plaintiff's request for a closed period of disability. Therein, Plaintiff's counsel argued that "for the last several months of the alleged closed period [March 20, 2012 to March 16, 2014], she would have been disabled under the grids. Her current work capacity is consistent with the sedentary [residual functional capacity], in fact if she -- if she wasn't working today, she would grid out anyway given the [residual functional capacity]." R. at 53.

## III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Commissioner is supported by substantial evidence in the record. *Mastro*, 270 F.3d at 177. The ALJ must determine if

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity)). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520).

Under this five-step sequential analysis, the ALJ made the following findings of fact and

conclusions of law: First, the ALJ determined that Plaintiff "meets the insured status requirements of [the Act] through December 31, 2019," and had not engaged in substantial gainful activity ("SGA") during her closed period of disability (March 20, 2012 through March 16, 2014), but that she returned to work at the SGA level on March 17, 2014. R. at 13 (citing R. at 156-57 ("Exhibit 6D")). The ALJ further noted that Plaintiff did not request benefits based on alleged disability for the period of March 17, 2014 to the present. R. at 13.

Second, the ALJ found that during the requested closed period, Plaintiff has the following severe impairments: obesity; degenerative joint disease ("DJD"); and right knee disorders. R. at 13 (citing 20 C.F.R. § 404.1520(c)). The ALJ concluded these aforementioned impairments were severe because they "cause fatigue, back[,] and right knee pain, their symptoms "restrict [Plaintiff's] ability to walk, stand, lift, and carry," and "significantly limit [Plaintiff's] ability to perform basic work-related activities." R. at 14.

The ALJ determined that other alleged impairments, including asthma, hypertension, and carpal tunnel syndrome were not severe impairments because those three disorders "did not exist for a continuous period of at least 12 months; were responsive to medication; did not require any significant medical treatment; and did not result in any continuous exertional or nonexertional functional limitations." R. at 14 (citing *Gross v. Heckler*, 785 F.2d 1163 (4th Cir. 1986); 20 C.F.R. § 404.1509; Social Security Ruling ("SSR") 85-28). The ALJ employed a thorough analysis (supported by numerous references to the medical records) before rejecting Plaintiff's other alleged impairments as not severe. The ALJ found that Plaintiff's asthma was well-controlled with the use of inhalers. R. at 14 (citing 229-71 ("Exhibit 1F"), 476-81 ("Exhibit 10F"), 570-627 ("Exhibit 12F")). For example, a December 2014 examination of Plaintiff

revealed that both Plaintiff's asthma and blood pressure were well-controlled. R. at 14 (citing R. at 597, 617, 623 ("Exhibit 12F at 28, 48, 54")). Additionally, the ALJ noted that Plaintiff's medical records reflected no evidence of major end organ problems related to Plaintiff's hypertension. R. at 14. With respect to Plaintiff's hand pain and numbness, Dr. Karen M. Thomas, D.O. ("Dr. Thomas") examined Plaintiff in January 2014 and a nerve conduction study ("NCS") indicated "median neuropathy severe on the right and mild on the left consistent with carpal tunnel syndrome." R. at 14 (citing R. at 570-627 ("Exhibit 12F")). The ALJ also noted that there was no evidence in the record that Plaintiff's asthma, hypertension, and carpal tunnel syndrome significantly limited Plaintiff's ability to perform basic work-related activities during the closed period at issue; therefore, such impairments were non-severe. R. at 14.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of physical and/or mental impairments that met or medically equaled on of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 14. Specifically, the ALJ noted that he considered, as he was required by SSR 02-1p to do, Plaintiff's obesity in determining whether she had medically determinable impairments that were severe and whether those impairments met or equaled any listing, because obesity may have an adverse impact upon co-existing impairments such as cardiovascular and respiratory health, and the strain on weight-bearing joints. R. at 14-15 (citing SSR 02-1p). Additionally, the ALJ considered Plaintiff's obesity in her ability to sustain activity on a regular and continuing basis during a fulltime work schedule, i.e., eight hours a day, five days a week or the equivalent thereof. R. at 15.

Then, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of sedentary work as defined in 20 C.F.R. § 404.1567(a), provided

the work only involved lifting and carrying from waist to chest level, walking no longer than one block at a time on a flat and even surface at a slow pace, standing no longer than fifteen minutes and siting no longer than fifteen to thirty minutes at [a] time before changing positions for a few minutes, no crawling, kneeling, climbing ladders, ropes, and scaffolds, but occasional other postural movements, and avoiding constant fingering, grasping, and handling. R. at 15. In making this RFC determination of less than sedentary work, the ALJ incorporated Plaintiff's obesity and carpal tunnel syndrome to account for attendant exertional limitations caused by such conditions. R. at 18.

Although the ALJ found that the evidence established the existence of medically determinable impairments that could reasonably be expected to result in Plaintiff's reported symptoms, the ALJ determined that the record did not support the degree of limitation Plaintiff claims. R. at 16. In arriving at this determination, the ALJ considered the medical records, the opinion evidence of State agency consultants, and Plaintiff's testimony, as well as her return to SGA. The ALJ performed a credibility analysis, noting that although the evidence supported Plaintiff's exertional limitations in lifting, carrying, and performing postural activities due to her physical limitations, based on the medical opinions (that of both treating physicians and independent state agency consultants), the conservative nature of Plaintiff's treatment, and the information contained in the provider progress notes, Plaintiff's claims of disabling limitations were not fully supported. R. at 15-18.

Fourth, the ALJ determined that Plaintiff was unable to perform her past relevant work as an administrative clerk, which the VE testified was a semi-skilled position performed at a light exertional level, placing it beyond Plaintiff's assessed RFC limiting her to sedentary exertional

work. R. at 18, 47. The ALJ also noted that as of March 20, 2012, the alleged disability date, Plaintiff was considered a "younger individual," between the ages of 18 and 44 as defined by 20 C.F.R. § 404.1563(c). R. at 18 (citing 20 C.F.R. § 404.1563(c)). Plaintiff also has a high school education and is able to communicate in English. R. at 18 (citing 20 C.F.R. § 404.1564).

Lastly, the ALJ found that considering her age, education, work experience, and RFC, the ALJ found that other jobs existed in significant numbers in the national economy that Plaintiff could perform, including as an order clerk, as a call out operator, or as a surveillance system monitor, and thus, she was not under disability during the relevant time period. R. at 18-19.

Therefore, the ALJ determined that Plaintiff was not under a disability from January 17, 2012[4] through March 16, 2014, the date Plaintiff returned to work. R. at 19.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is

---

[4] This finding encompasses Plaintiff's amended alleged onset date of March 20, 2012.

disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

**A. The ALJ did not err by failing to find that Plaintiff was entitled to a closed period of disability insurance benefits from March 20, 2012 through March 16, 2014.**

In the only claim of error alleged in the Complaint and in her Motion for Summary Judgment, Plaintiff maintains that the ALJ should have found her disabled as of her fiftieth birthday in January 2014, based on the Medical-Vocational Guidelines, or Grid Rules, and specifically, Grid Rule 201.14 ("201.14"), which applies to an individual "closely approaching advanced age," and shares Plaintiff's educational profile (high school graduate), RFC (sedentary work), and past relevant work (semi-skilled without transferrable skills and without any recently completed education that would provide for direct entry into skilled work). *See* ECF No. 17 (Plaintiff's Reply) at 1 ("There is no other issue in this case but for this."). *See also* ECF No. 16 at 9 (citing Grid Rule 201.14, 20 C.F.R. Pt. 404, Subpt. P., App. 2; 20 C.F.R. § 404.1563(d)). Thus, Plaintiff contends that the Court should remand the matter back to the ALJ for application of the appropriate Grid Rule. ECF No. 12 at 4-5. *See also* ECF No. 17 at 1-2 (same). According to Plaintiff, the ALJ used Grid Rule 201.21 ("201.21") to deny Plaintiff's claim, however, 201.21 applies to the age category of 45-49. *See* Grid Rule 201.21, 20 C.F.R. Pt. 404, Subpt. P., App 2. According to Plaintiff, upon Plaintiff's fiftieth birthday in January 2014, Grid Rule 201.14 applies as of that date and through March 16, 2014, which mandates a partially

13

favorable disposition and a closed period of disability for Plaintiff, and given that Plaintiff is entitled to a Trial Work Period for the time period of March 2014 and November 2014. ECF No. 12 at 4-5; *see also* R. at 228 (Plaintiff's Representative Brief in Support of Request for Review).

The Commissioner concedes that the ALJ's decision failed to "expressly acknowledge that Plaintiff changed age categories during the closed period of disability" on her fiftieth birthday in January 2014. ECF No. 16 at 9. Notwithstanding this concession, the Commissioner argues that such failure of acknowledgement represents harmless error which requires neither reversal nor remand because "Plaintiff did not, and could not, establish that her disability lasted a continuous period of at least twelve months during the closed period that she alleged in her application for DIB." ECF No. 16 at 9. The Court finds the Commissioner's position to be persuasive for several reasons.

First, the statutory language of the Act makes clear that in order to be found "disabled" under the Act, a claimant must demonstrate an inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *See also* 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, you must have a severe impairment(s) that makes you unable to do your past relevant work (see § 404.1560(b)) or any other substantial gainful work that exists in the national economy."). Thus the "duration" requirement applies with equal force to both the severe impairment ***and*** the inability to engage in

SGA. *See Barnhart v. Walton*, 535 U.S. 212, 219 (2002) ("The interpretation makes considerable sense in terms of the statute's basic objectives. The statute demands some duration requirement. No one claims that the statute would permit an individual with a chronic illness—say, high blood pressure—to qualify for benefits if that illness, while itself lasting for a year, were to permit a claimant to return to work after only a week, or perhaps even a day, away from the job. The Agency's interpretation supplies a duration requirement, which the statute demands, while doing so in a way that consistently reconciles the statutory 'impairment' and 'inability' language.") (citing SSR 82–52, p. 106 (cum. ed. 1982) ("In considering 'duration,' it is the inability to engage in [substantial gainful activity] that must last the required 12–month period")). Plaintiff's application for a strictly closed period of disability (of approximately two months) fails to meet the twelve month durational requirement. Rather, as the Commissioner correctly notes, "[a]t most, Plaintiff established an inability to engage in substantial gainful activity for approximately two months, between January … , 2014 and March 16, 2014." ECF No. 16 at 10.

Furthermore, at no point in either her DIB application or in the hearing brief before the ALJ did Plaintiff seek to have her return to work be considered a "trial work period." However, the failure to make such a request is of no moment given Plaintiff's misguided interpretation and urged application of "trial work period." The "trial work period" as defined by the SSA regulations, is

> a period during which you may test your ability to work and still be considered disabled. It begins and ends as described in paragraph (e) of this section. During this period, you may perform services (see paragraph (b) of this section) in as many as 9 months, but these months do not have to be consecutive. We will not consider those services as showing that your disability has ended until you have performed services in at least 9 months. However, after the trial work period has

15

>ended we will consider the work you did during the trial work period in determining whether your disability ended at any time after the trial work period.

20 C.F.R. § 404.1592(a). *See also* 42 U.S.C. § 422(c). By arguing that the approximately two month period between January 2014 and March 16, 2014 was merely part and parcel of the total allowable nine months of a "trial work period," Plaintiff appears to conflate the SSA policy of disallowing a claimant's brief, yet unsuccessful attempt to return to SGA to operate as a detriment against said claimant, with an automatic entitlement to such a benefit. This flawed interpretation has been presented to and soundly rejected by the Supreme Court. *See Barnhart v. Walton*, 535 U.S. 212, 223 (2002) (rejecting the plaintiff's contention that "he was in turn entitled to a 'trial work' period; and his subsequent work as a cashier, being 'trial work,' should not count against him" because "[t]he Agency's regulations plainly reject this view of the statute. They say, 'You are not entitled to a trial work period' if 'you perform work . . . within 12 months of the onset of the impairment(s) . . . and before the date of any notice of determination or decision finding ... you ... disabled.'") (quoting 20 CFR § 404.1592(d)(2) (2001)). This Court sees no reason to depart from well-established (and binding) case law. In so doing, the Court also rejects Plaintiff's effort to distinguish Plaintiff's return to SGA from that of the claimant in *Walton*. *See* ECF No. 17 at 2.

To the extent that Plaintiff encourages the Court to consider Plaintiff's return to work at the sedentary RFC level, or to consider any time outside the specific closed period of alleged disability, the Court declines Plaintiff's request. Here, the Court finds that substantial evidence in the record supported the ALJ's determination that during the relevant period, Plaintiff was not disabled and capable of engaging in SGA, albeit at a sedentary level of exertion, and therefore remand is unwarranted. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that

if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision).

Additionally, the Court notes that Plaintiff's encouragement of the Court to consider any time beyond the closed period at issue (by virtue of Plaintiff's emphasis on Plaintiff's return to SGA at the RFC level assessed by the ALJ) only detracts from Plaintiff's position that 201.14 should have been applied because the Grid Rules are engendered only "where an individual with a severe medically determinable physical or mental impairment(s) *is not engaging in substantial gainful activity*." Grid Rule 200.00(a) ("Introduction"), 20 C.F.R. § Pt. 404, Subpt. P, App. 2 ("The following rules reflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work.") (emphasis added). *See e.g.,* ECF No.12 at 4 ("She later returned to work on March 17, 2014 in a sedentary capacity, the same as the ALJ's RFC finding."). It is axiomatic that "[i]f a claimant is performing substantial gainful activity, then [s]he is not disabled." *Trigg v. Sullivan*, No. 90-0003-B, 1991 WL 426309, at *1 (W.D. Va. July 17, 1991).

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** the Commissioner's Motion for Summary Judgment, ECF No. 15, be **GRANTED**, Plaintiff's Motion for Summary Judgment, ECF No. 11, be **DENIED**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

/s/ Lawrence R. Leonard
LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
January 25, 2018